Crawford, adm'r, vs. Cato.

No. 14.—ROBERT A. CRAWFORD, Adm'r, plaintiff in error, vs. BUTT L. CATO, defendant in error.

The seizure of property by force, and holding it until the owner executes promissory notes for its release, without the semblance of a consideration, is a species of duress, and a Court of Equity will relieve the maker by preventing their collection.

In Equity in Webster Superior Court. Tried before Judge KIDDOO, April Term, 1857.

This bill was filed by Butt L. Cato, against William Johnston, administrator of John A. Lyon, deceased, to enjoin an action at law, and to have certain notes delivered up and cancelled.

The bill states, that in the year 1849, complainant then a resident of Stewart county, was in possession of a negro man named Henry, whom he had owned for more than seven years, when John A. Lyon of the county of Harris, with three other men, armed, came into the field on complainants plantation where said negro was at work, and seized and tied him, and was about taking him off. That complainant coming up to where they had said boy confined, Lyon drew his

knife, and having a stick in his hand, and saying he had a revolving pistol in his pocket, swore he would carry said negro off, if complainant did not pay him or secure to him a debt of six hundred dollars which Lyon alleged that Dr. James W. Cato a brother of complainant owed to him. That complainant owed said Lyon nothing, and never had. That in order to release his negro from Lyon's custody, and to have his services in the crop, and not being able to get out any legal process to prevent said outrage, before said negro could have been removed out of the county, complainant gave to Lyon with his son John W. Cato, as his security, his three notes, each for two hundred dollars. That said notes were without consideration and obtained thus by threats and violence. That said Lyon had since departed this life, and William Johnson his administrator, had commenced suit upon one of the notes, which had become due. The bill prayed for an injunction to restrain the action at law upon said note, and that that and the two others should be delivered up and cancelled.

The answer of the administrator admitted that suit had been commenced upon the note which with two others he found amongst the papers of his intestate. Knows nothing of the consideration of the notes; supposes they are for a good and valuable consideration; knows nothing, nor has he ever heard anything of the circumstances set forth in complainant's bill.

*John S. Thomas,* testified that on the —— day of May, 1847, he was at the plantation of B. L. Cato, in Stewart county; that John A. Lyon, and two other men came there, and Lyon seized a negro man who was at work in the field, and tied him; that soon after Cato came up and asked Lyon what he was doing; he replied with an oath, that he would carry off that negro, if Cato did not pay him $600. Cato asked him if he owed him any money; Lyon replied that Dr. James W. Cato owed him $600, and he believed Dr. Cato got the money for him B. L. Cato; and he swore he would take off

Crawford, adm'r, vs. Cato.

the negro if B. L. Cato did not pay or secure to him the $600. Lyon had a stick in one hand and a knife in the other, and said he had as good a pistol as ever fired, and he would carry off that negro or die, if Cato did not pay or secure to him the $600, which Dr. Cato owed him; Cato frequently said to Lyon, "you know I do not owe you a dollar." Lyon would reply: "I believe Dr. Cato got the money for you, &c." That the others who were with Lyon each had a stick; that finally, rather than loose his negro, Cato agreed to give his notes for the $600, which he did. Lyon and his associates, lived in Harris county, Georgia. Did not hear Lyon claim the negro as his property.

The testimony of the witness, Thomas, was fully sustained by James Cato, a witness, who was ploughing in the field at the time, and that B. L. Cato had had the negro since 1842.

*John W. Winston,* teslified, that he lived with Lyon in 1841, as an overseer; knew the negro boy in dispute; about the time said boy disappeared from the plantation of Lyon, saw whitemen lurking about; next time the boy was heard of, was in possession of complainant in Stewart county. The negro was in possession of Lyon but a short time in 1841.

*John J. Kelly,* testified, that he knew the parties, and the boy in dispute; knew him in Lyon's possession a short time in 1841; and in 1849: He was called on by Lyon to go with him to Stewart county, for the purpose of getting the boy, who Lyon said, Cato was harboring; went with him, with some other persons, neighbors of Lyon, who were requested to go with them to Cato's, where they found the boy. Went to the field where the boy was: Lyon took the boy and tied him; Cato came up and wanted to know what he meant. Lyon swore he was going to take his negro home, unless Cato would pay him for him. The matter was adjusted by giving the notes, now in controversy; no one was armed as witness knew. Cato drew out his knife and cut the boy

Crawford, adm'r. vs. Cato.

loose; Lyon then drew his knife; he had a stick and swore he would take the negro off, if Cato did not pay him $600.

*William D. Cobb*, a grand juror, on former trial, testified, that Byar then dead, testified, on the former trial, that he was employed by Lyon to bring trover against Cato for said negro, and that he had in his possession a bill of sale to said boy, which was lost or destroyed, that he could not produce it. Lyon was a man of considerable property, and lived in Harris county. Affidavit of administrator was received, laying the foundation for secondary evidence as to the bill of sale, and notice to produce.

Defendant then read in evidence the notes, and the testimony closed.

The presiding Judge charged the jury, that if they believed the notes were given under duress, then they were void, if not then defendant was entitled to recover.

The jury retired and found for the complainant, whereupon, the counsel for defendant moved for a new trial, upon the grounds:

1st. That the Court erred in its charge to the jury.

2d. That the verdict was contrary to evidence.

The Court refused the motion for a new trial, and defendant excepted.

RAMSAY & KING, for plaintiff in error.

TUCKER & BEALL, for defendant in error.

*By the Court.*—McDONALD, J. delivering the opinion.

The case stated in the bill, is one of overbearing violence on the part of the plaintiff in error's intestate. He went into the field of defendant (in error,) with three other armed men, and seized a negro man, whom the defendant had owned for more than seven years. He tied him and was about carrying him off, when the defendant came up. The plain-

tiff drew his knife, and having a stick in his hand, and say-
ing he had a revolving pistol in his pocket, swore he would
carry said negro off, if complainant did not pay him or se-
cure to him six hundred dollars, which, he alleged, Dr. James
W. Cato, defendant's brother owed to him.   The defendant's
bill further states that he owed the plaintiff nothing and
never had, that in order to release his negro from the custo-
dy of the plaintiff and his associates, and to have his work
and services on the crop, he was induced to give his three
notes with his son John W. Cato as security for two hundred
dollars each; that said notes were without consideration and
obtained by threats and violence.   The administrator's an-
swer states that he knows nothing of the consideration of the
notes.   There is a conflict in the evidence on a point very
material to the issue.   The defendant's witnesses testified
that intestate seized the negro, and swore he would carry
him off, if the defendant did not pay him six hundred dol-
lars that Doctor Cato owed him.   The plaintiff's witnesses,
or one of them, testified that the intestate claimed the negro,
and swore he would carry him off, if the defendant did not
pay him for him.   If the latter witness gives the true account,
there was no duress; for the intestate was making a recap-
tion of his own property, and after he had seized it, illegally
no doubt, because not in fresh pursuit, the parties compro-
mised as stated by that witness.

In this conflict of evidence, the matter was referred to the
jury, to determine whether there was duress or not.   The
charge of the Court to the jury on that point is excepted to.
The charge is very brief, and does not explain to the jury,
what constitutes duress, and it is insisted that there was no
duress even in the aspect of the case, most unfavorable to
the plaintiff.   According to the defendant's evidence the note
was without consideration, for it does not appear that he was,
in any manner, liable to the intestate for the money loaned
to Dr. Cato.

This case is now in a Court of Equity, which will relieve,

although the circumstances might not be considered as making out a case of duress in a Court of law. A Court of chancery will look into the matter and ascertain if the notes were executed " freely and voluntarily, or by compulsion; if by fear or terror though not so as to make it, *per dures*," they ought to be set aside. *Atty. Gen. vs. Lothan* 2. *Vernon* 497· This case is referred to in *Bacon's Abr. Duress A.*, where it is said, that "in Equity, if a man enters into a bond by compulsion, through the terror and fear, are not sufficient to make it duress at common law, yet it may be relieved against." A threat that an annuity would be withheld from a man in reduced circumstances if he did not execute a deed affirmative of a sale by trustees, has been held to have the effect of placing him in complete and absolute duress. *Oliver et ux, vs. Court et al. 3 Eng. Exch. Rep.* 312, 336, 337. In the case of *Atlee vs. Backhouse, 3. Meeson and Welsbey* 650, Sir James Parke remarks, " If my goods have been wrongfully detained, and I pay money simply to obtain them again, that being paid under a species of duress or constraint, may be recovered back; but if, while my goods are in possession of another person, I make a binding agreement to pay a certain sum of money, and to receive them back, that cannot be avoided." If it be not a *binding* agreement, it may be avoided; and Baron Parke proceeds to discuss that subject, as applicable to the case before him. That was a case of seizure of spirits made by the officers of excise. Upon agreement with the commissioners of excise, the spirits was restored to the plaintiffs, who paid the appraised value to the defendant, who was Receiver General of excise. The suit was brought to recover back the money paid under the agree ment, and the Court held it binding, because *both parties considered the seizure legal*, and the consideration was therefore held to be valid. It was remarked then that if they had known it to be an illegal seizure, there might be a question as to the validity of the agreement. The question in such cases is, whether, if the mind of the party had been free to

Cheever vs. Hora.

act, the agreement would have been executed. The question ought to have been submitted to the jury, whether the giving of the notes by Cato and his son to Lyons, though they were freely executed, was not speaking the mind of Lyons, and not their own. *Peel vs.* —— 16. *Vesey* 158  It was insisted that the execution of the notes by the son was valid and good as to him. " The duress of a wife or child would avoid a contract, given under its influence by a parent or child." *Comyn on Cont.* 208. Here, the mind of Lyons was operating through Cato upon his son; for certainly, when he called on his son to become his surety, he did so, because he was constrained to it by the conduct of Lyons. There was certainly, in the language of the Court in the case referred to in *Meeson & Welsbey*, a species of duress in this case, if the witnesses for the defendant are to be believed. There must be the concurrence of two minds to form a contract. If one of the parties wills that another shall execute a deed of conveyance or promissory note, and seizes his property without authority, and refuses to release it until he signs such conveyance or note, there is but a single mind operating in such a case.

The testimony was conflicting, but the preponderance was, we think, with the verdict.

Judgment affirmed. ·