GILMORE *et al. v.* HUNT.

1. Equity will entertain a petition by a married woman to cancel, in the hands of her grantee, a warranty deed improperly procured by duress and in payment of her husband's debt, which has been duly recorded, although the grantee be in possession of the land and there be no specific prayer for the recovery of the land.

2. Where a married woman seeks cancellation of a deed on the ground that it was procured by the grantee in payment of her husband's debt, and the grantee contends that the consideration was the payment of a certain sum of money and a note and mortgage on the land, executed by the plaintiff to a third person, it is competent for the grantee to prove that he did actually pay the mortgage without notice that its consideration was the husband's debt.

DECEMBER 15, 1911.

Petition for cancellation of deed. Before Judge Rawlings. Washington superior court. September 26, 1910.

*W. E. Armistead* and *Hines & Jordan,* for plaintiffs in error.
*Hardwick & Wright* and *J. E. Hyman,* contra.

EVANS, P. J. Polly Ann Hunt filed her petition against George T. Gilmore and his wife, making substantially the following allegations: During the night of December 11, 1906, George T. Gilmore brought with him three other men, one of whom was an officer authorized to make arrests, to the home of the plaintiff and demanded that D. H. Hunt, her husband, pay a debt due by him to said Gilmore. "The said Gilmore exhibited a criminal warrant sworn out by said Gilmore, charging said D. H. Hunt with larceny after trust, and threatened to have the same then and there executed unless said indebtedness was then and there settled and satisfied. The said Gilmore suggested and demanded that petitioner execute the aforesaid deed [a deed hereinafter referred to] in settlement of the indebtedness of said D. H. Hunt; and acting under stress of the surroundings and circumstances, and being coerced by the fears of said threatened criminal prosecution against her hus-

band, and being moved by the importunities of her husband and the demands, coupled with said threats, of the said Gilmore, petitioner authorized her name to be signed to said deed, which had already been prepared by said George T. Gilmore." Her deed was made to the wife of George T. Gilmore upon a stated consideration of $300, and contained a warranty of title; and it was duly recorded. The only consideration of the deed was the settlement of a debt due by the plaintiff's husband to George T. Gilmore. "The said defendant, George T. Gilmore, knew at the time that the land described in said deed was the property of petitioner, and that her husband, D. H. Hunt, had no interest therein; and he knew that said deed was given for the sole purpose of paying a debt of petitioner's husband for which petitioner was in no wise liable or responsible." The defendants are in possession of the land which the deed purports to convey. In addition to a prayer for process, the prayers of the petition are: that the deed "be, by the judgment and decree of this court, declared null and void, and the same be canceled; that the said defendants be required to produce said original deed into court, that the same may be canceled by the clerk thereof as a cloud upon petitioner's title; that petitioner have such other and further general relief as the necessities of the case may require." A verdict was rendered in favor of the plaintiff. The defendants excepted to the overruling of their motion for a new trial, and to the refusal of the court to sustain their demurrer.

1. According to the allegations of the petition, the deed sought to be canceled was without consideration. The deed of a married woman in payment of the debt of her husband is void. Likewise a deed executed under compulsion or duress is not binding upon the maker. It is alleged in the petition, that late at night one of the defendants came to the house of the plaintiff, accompanied by three men, one of whom was an officer, called up her husband from bed, threatening to arrest him for some criminal offense, unless he would procure her to sign a deed; and yielding to her husband's entreaties, and under fear that their threats of prosecution would be carried into execution, she signed the deed. These circumstances constitute duress. *Southern Express Co.* v. *Duffy*, 48 *Ga.* 358; *Crawford* v. *Cato*, 22 *Ga.* 594; Civil Code (1910), § 4255. It is urged by way of demurrer, that, notwithstanding the deed sought to be canceled may be invalid, according to the allegations of the pe-

18

tition the plaintiff is not entitled to a decree of cancellation, because she had an adequate remedy at law by ejectment to recover the land. It is true that a married woman may recover possession from her grantee who claims under a deed from her, given in payment of her husband's debt, without equitable pleadings to cancel it on account of its invalidity. *Taylor* v. *Allen,* 112 *Ga.* 330 (37 S. E. 408) ; *Bond* v. *Sullivan,* 133 *Ga.* 160 (65 S. E. 376, 134 Am. St. R. 199). There is also an instance of a physical precedent where a plaintiff sued in ejectment, notwithstanding the defendant undertook to defend under a deed from the plaintiff, which the jury found to have been procured by fraud and duress. *Findley* v. *Hulsey,* 79 *Ga.* 670 (4 S. E. 902). However, it is one of the established grounds of equitable jurisdiction to cancel deeds obtained by fraud or other illegal means. Under the common-law practice in ejectment, the issue only comprehended a competition between the titles of the adverse parties. The plaintiff could only recover upon legal title or its equivalent, a perfect equity; and ordinarily it was a good reply to the plaintiff's title to exhibit a deed from the plaintiff. In the course of time the practice allowed proof of the invalidity of a deed relied upon as muniment of title; but this practice did not serve to oust equity of its jurisdiction, if the remedy at law was not as adequate as that afforded in equity. In *Crawford* v. *Cato,* supra, one of the parties, by means of duress, obtained three promissory notes from the other. He brought his action upon one of them; whereupon the maker filed a bill to restrain that action and to cancel all the notes; and the court held that, as the notes were obtained under duress, a court of equity would relieve the maker by canceling them and by preventing their collection. In *Walker* v. *Hunter,* 27 *Ga.* 336, the defendant was in possession of land under a deed obtained by undue influence; the heirs at law of the maker brought suit to decree its cancellation; and it was held that a court of equity had jurisdiction to cancel a deed without consideration, which was procured by undue influence. In *Bond* v. *Watson,* 22 *Ga.* 637, there was an ejectment suit pending against the defendant, who filed a bill to cancel the deed under which the plaintiff held, on the ground that it had been improperly obtained; and the court held that such an equitable suit was maintainable, because a court of law had no jurisdiction to set aside and cancel a deed improperly obtained. There can be no doubt that if

the plaintiff had prayed for a recovery of the land, her suit would have been maintainable. *Fulgham* v. *Pate, 77 Ga.* 454. Since the uniform procedure act of 1887, it is competent for the plaintiff to obtain both legal and equitable relief in the same suit; but it does not follow that a plaintiff can not go into a court of equity, where the only relief claimed is of an equitable character. The plaintiff would have a right to go into a court of equity and have the deed canceled, preparatory to filing her action to recover the land, if she elected to prosecute her demands separately. It is no reply to the maintenance of her action for cancellation that she could recover in ejectment without having the deed canceled, for the reason that if she did recover the land her recorded deed would be outstanding against her, and would be a cloud upon her title. While it may be true, as a general rule, that, in order to maintain a petition to remove a cloud upon a title, the land must be vacant or the plaintiff be in possession, or have no present right of action (*Weyman* v. *Atlanta,* 122 *Ga.* 539 (50 S. E. 492)), nevertheless an action is always maintainable to cancel a deed procured by fraud or duress, where the legal remedy is not as efficacious as that afforded by a court of equity.

2. On the trial there was a sharp conflict between the testimony of the plaintiff and the defendants, respecting the consideration of the deed sought to be canceled, and the circumstances under which it was executed. The plaintiff's testimony tended to support the allegations of her petition. The defendant Gilmore testified, that the deed was freely and voluntarily executed by the plaintiff; that it was executed in consideration of the payment of a mortgage on the land conveyed, given by the plaintiff to one Jackson, and a certain sum to be paid the plaintiff; that he paid the amount due on this mortgage to Jackson, which the plaintiff had neither paid nor offered to pay. The plaintiff replied to this contention by testifying that the mortgage to Jackson was given to secure a debt of her husband, and that the defendant paid the same after its maturity. The defendant Gilmore then offered to testify that at the time he paid the mortgage to Jackson he had no knowledge that it was given to secure her husband's debt. The court repelled the testimony. We think the testimony was admissible. Any contract of a married woman to secure or pay her husband's debt is void, and in the hands of the payee, or one with no-

tice, she may set up this defense. Such defense, however, is not available against one who pays the debt at her instance, without notice that it was the debt of her husband. This is not a suit to enforce the mortgage note, so as to make applicable the rule that one who takes negotiable paper after maturity takes it subject to any defense the maker may have to it. If the contention of the defendant Gilmore be true, he simply paid a certain sum of money in satisfaction of a mortgage note, apparently the debt of the married woman, and at her direction, without notice that it was her husband's debt; and she will not thereafter be permitted to repudiate the payment made by him at her request, and without notice of the invalidity of the note discharged by his payment. To hold otherwise would be to permit a married woman under these circumstances to perpetrate a fraud. This testimony was vital to the contention of the defendants, as made in the pleadings and in the evidence; and the court erred in repelling the testimony.

3. In other respects the trial was without error.

*Judgment reversed. All the Justices concur, except Fish, C. J., disqualified, and Hill, J., not presiding.*