A00A1192. A & D ASPHALT COMPANY, INC. et al. v. CARROLL & CARROLL OF MACON, INC.

(543 SE2d 397)

PHIPPS, Judge.

In September 1995, Carroll & Carroll of Macon, Inc. entered an asset purchase agreement with A & D Asphalt Company whereby Carroll purchased A & D's business and essentially all of its assets. Carroll and A & D also entered a lease agreement whereby Carroll

---

[55] Id. at 299 (1).
[56] *Hogan v. State*, 118 Ga. App. 398, 400 (163 SE2d 889) (1968).

was given a five-year lease on real property belonging to A & D, which included 17.4 acres of land, an asphalt plant, shop facilities and administrative offices. The lease agreement contained a provision which gave Carroll the option to purchase the leased premises for $175,000 but only at such times as it was not in default under the agreement or any contemporaneously executed instruments or agreements. On June 18, 1996, A & D informed Carroll by letter that Carroll was in default of the lease agreement because it had installed an underground natural gas line on the property. A & D further informed Carroll that, pursuant to the lease agreement, A & D would declare the lease cancelled and terminated if the alleged default was not cured within 30 days.

By letter dated June 20, Carroll disputed A & D's contention that it was in default and asked for clarification of the basis for A & D's contention. The dispute was not resolved, and on August 1, A & D sent a letter to Carroll declaring that the lease had been cancelled and terminated as of July 19. On August 9, Carroll sent a certified letter to A & D stating that it was exercising its option to purchase the property.

A & D refused to sell the property. And thereafter Carroll filed suit, stating several claims and seeking specific performance, declaratory and injunctive relief and damages.

A & D filed a counterclaim against Carroll, asserting that by installing a natural gas pipeline on the leased property Carroll had permanently encumbered the property and encroached upon existing easements that had been granted other utilities and companies. A & D asserted that the installation of the pipeline constituted a default and that the failure to cure the default within 30 days constituted a breach of the lease. Furthermore, it contended that the installation of the pipeline impaired the marketability of the property.

A & D moved for jury trial on all issues triable by a jury. The court severed the equitable claims and, after hearings, decided them without a jury.

By order dated July 21, 1998, the court enjoined the President of A & D from activities which violated a noncompete agreement. That ruling was appealed to the Supreme Court of Georgia. The Supreme Court transferred the appeal to this court, and in Case No. A99A0736, this court affirmed that judgment of the trial court.[1]

By order dated October 27, 1998, the trial court ruled that Carroll had not defaulted on its obligations under the lease and that it

---

[1] *A & D Asphalt Co. v. Carroll & Carroll of Macon, Inc.*, 238 Ga. App. 829 (520 SE2d 499) (1999).

had properly exercised its option to purchase the property. Therefore, with Carroll having paid $175,000 into the registry of the court, the court ordered that title to the property would be vested in Carroll. The court further ordered A & D to return to Carroll the rent payments it made during the period A & D refused to sell the property.

The latter judgment is the subject of the instant appeal, which was also filed in the Supreme Court of Georgia and transferred to this court.

1. A & D contends that the trial court erred in deciding Carroll's specific performance claim without a jury. At the beginning of the hearing on Carroll's claim for specific performance, A & D asserted that it was entitled to a jury trial on the claim because it overlapped factually with Carroll's damages claims.

An action for specific performance lies in equity,[2] and there is no right to a jury trial on claims that lie in equity.[3] However, a demand for jury trial must be honored with respect to damages claims that are raised in the same case with equity claims.[4] "In order to preserve the right to a jury trial on the question of damages, the jury trial on the damage question should [be] held prior to the nonjury trial o[n] the [equity] issue. [Cits.]"[5] If such a procedure is not followed, "any issue common to both the legal and equitable claims [would be] finally determined by the court and the party seeking trial by jury on the legal claim [would be] deprived of that right as to these common issues."[6] The question we must determine then is whether Carroll's claim for specific performance had factual issues in common with its damages claims.

Carroll raised eight claims for damages against A & D. In one, it asserted that it was entitled to a refund of rent payments it had paid to A & D after A & D had wrongfully refused to sell the leased property. The remaining claims alleged the following types of actionable conduct by A & D: (1) withholding sums paid on construction contracts that were purchased from A & D by Carroll and performed by Carroll; (2) misrepresenting the value of assets purchased from A & D by Carroll; (3) misrepresenting the amount of contaminated soil on the property and (4) failing to comply with environmental laws on the leased property.

Only the claim seeking a return of rent payments presented factual issues that were also a part of the claim for specific performance.

---

[2] *Clayton v. Deverell*, 257 Ga. 653, 654 (3) (362 SE2d 364) (1987); *Lemke v. Southern Farm &c. Ins. Co.*, 182 Ga. App. 700 (356 SE2d 739) (1987).

[3] *Cawthon v. Douglas County*, 248 Ga. 760, 762 (1) (286 SE2d 30) (1982).

[4] Id. at 764.

[5] *Life for God's Stray Animals v. New North Rockdale County Homeowners Assn.*, 253 Ga. 551, 553 (4) (322 SE2d 239) (1984).

[6] *Dairy Queen v. Wood*, 369 U. S. 469, 472 (82 SC 894, 8 LE2d 44) (1962).

However, that request for damages did not necessitate a jury trial. When a court sitting in equity awards specific performance, it may also award incidental damages to the plaintiff "in order to make [it] whole."[7] In *Golden v. Frazier*, the Supreme Court of Georgia explained:

> [S]pecific performance at the end of a protracted litigation under compulsion is practically never full performance of the contract; instead, there has been an extensive and injurious partial breach. In such a case, the court should decree the payment of damages for the partial breach that has already occurred, even though obedience of the decree will prevent the commission of further breaches. [Cit.][8]

Thus, we find no factual overlap between Carroll's claim for specific performance and its claims for damages that required the trial court to conduct a separate damages trial.

On appeal, A & D also argues for the first time that it was entitled to a jury trial because it had filed a counterclaim for damages against Carroll and because Carroll was not in compliance with several provisions of the agreements relating to insurance, taxes, accounts receivable, environmental laws and assignment of rights. Because this argument was not ruled upon by the trial court and is being raised for the first time on appeal, this court will not consider it.[9]

We find no error in the trial court's determination that Carroll's claim for specific performance could be tried without a jury.

2. Next we consider whether the trial court correctly decided Carroll's claim for specific performance. A & D asserts that Carroll's attempt to exercise the option was invalid because Carroll was in default under the lease at the time and because the purchase option no longer existed.

(a) Paragraph 12 (a) of the lease agreement provides that the "option to purchase can be exercised only at such times as [Carroll] is not in Default under this Lease, the Asset Purchase Agreement or any of the instruments executed contemporaneously therewith." A & D asserts that the installation of the natural gas pipeline caused Carroll to be in default of several provisions of the lease — paragraphs 10 (a) (iii), 11 (a) and 19.

Paragraph 10 (a) (iii) states that A & D may terminate the lease

---

[7] *Golden v. Frazier*, 244 Ga. 685, 688 (3) (261 SE2d 703) (1979); see also *Clayton*, supra at 655 (4).

[8] (Punctuation omitted.) 244 Ga. at 688 (3).

[9] See *Busbee v. Chrysler Corp.*, 240 Ga. App. 664, 666 (1) (524 SE2d 539) (1999).

and regain possession of the leased premises if "[Carroll] attempts to assign or transfer the rights, title and interests conveyed hereunder without the express written consent of [A & D]. . . ."

Paragraph 19 provides, "[Carroll] shall not, without first obtaining the written consent of [A & D], assign, mortgage, pledge, or encumber this lease, in whole or in part, or sublet the Leased Premises or any part of the Leased Premises."

Central to A & D's argument that Carroll had violated these provisions is a claim that Carroll had caused an easement to be given to the gas company through the partial installation of the pipeline. A & D does not assert that Carroll expressly granted an easement to the gas company. Instead, it asserts that the easement was created by implication or prescription.

The trial court found that Carroll did not cause the pipeline to be installed on the leased premises. Instead, it found that Carroll had only negotiated with the gas company to lay the pipeline up to the boundary for the property until suitable arrangements were made to run the pipeline across the property to the plant. The court found that a contractor retained by the gas company mistakenly installed the pipeline onto a portion of leased property before he was told to stop.

A & D maintains that Carroll bears some degree of responsibility for the installation of the pipeline. It suggests that Carroll was aware the contractor would install the pipeline. But because there is support in the record for the trial court's factual findings, they are not clearly erroneous and we must accept them.[10]

The unauthorized, mistaken partial installation of a pipeline by the gas company did not create an easement in the leased premises.[11] At most, the unauthorized installation of the pipeline was a trespass to which Carroll failed to object. Installation of the pipeline did not constitute an attempt by Carroll to transfer or assign an interest in the property or to mortgage, pledge or encumber the lease.

Paragraph 11 (a) of the lease provides:

> [Carroll] will conduct its Business so as to cause no claims of any kind or any actions, suits, proceedings, arbitrations, or investigations to be filed or threatened in any court or before any governmental agency or instrumentality or arbitration panel or otherwise against, by or affecting the Leased Premises, or which would prevent the performance of this Lease or any of the transactions contemplated hereby or declare

---

[10] See *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693 (527 SE2d 293) (1999).
[11] See generally Hinkel, Pindar's Ga. Real Estate Practice & Procedure (5th ed. 1998), §§ 8-8, 8-9, 8-14.

the same unlawful or cause the recision [sic] thereof. Lessee will comply in all material respects and will not become in default in any material respect under any federal, state, or local law, regulation, ordinance, rule or order (whether executive, judicial, legislative or administrative) or any order, writ, injunction, or decree of any court, agency, or instrumentality.

A & D does not assert that any actions, suits, proceedings, arbitrations or investigations were filed or threatened because of the installation of the pipeline. Nor does it assert that the installation of the pipeline violated any law, regulation, ordinance, rule, order, writ, injunction or decree.

Instead, it asserts that the pipeline encroached upon easements which had been previously granted to others. Even assuming that to be true, paragraph 11 (a) does not bar actions which raise the *possibility* of legal conflict. It bars actions by Carroll which cause lawsuits to be filed or threatened.

For these reasons, we find no error in the trial court's determination that Carroll was not in default under paragraphs 10 (a) (iii), 11 (a) or 19.

(b) A & D asserts that Carroll's August 9 letter exercising its option to purchase was ineffective as such because the option had been rejected and a counteroffer proposed by a letter of July 24 from Carroll's attorney to A & D. In the earlier letter, Carroll's attorney wrote:

My client is willing to exercise the option [to purchase], but in connection therewith [Carroll] would expect you to agree to the following terms: (a) you will deliver to [Carroll] all monies owed to [Carroll] under the Bibb County contracts [Carroll] completed on behalf of [A & D]; (b) you will cooperate with [Carroll] in getting the remainder of these contracts assigned to [Carroll] so that it can deal directly with Bibb County rather than going through [A & D]; and (c) you will reimburse [Carroll] for the reasonable costs of bringing the property into compliance with the environmental laws, in discharge of your obligations under . . . the Asset Purchase Agreement.

An option to purchase land is a contract where an owner agrees with another person that he shall have the right to purchase the described property within *a specified time period at a fixed price, on agreed terms and conditions.* [Cits.] The contract binds the seller to sell, but leaves it dis-

cretionary with the other party to buy. [Cit.][12]

The seller's obligation to sell comes to fruition "when the option is exercised according to its terms."[13] Under the commonly accepted view:

> A notice of acceptance that is in any respect conditional or that reserves to the party giving it a power of withdrawal is not an operative notice of acceptance. Such a conditional notice or erroneous attempt to accept does not terminate the power to accept as created by the option, but it is not itself an acceptance. *Neither a counter-offer nor a rejection terminate[s] the power of acceptance under an option contract.*[14]

Here, it is debatable whether the letter of July 24 was an attempt by Carroll to exercise its option to purchase. But, even if we assume that it was a conditional attempt to exercise the option, it did not constitute a rejection of the option to purchase, which, by contract, was granted to Carroll through the life of the lease. There is no dispute that the August 9 letter was a proper exercise of Carroll's option to purchase. Thus, we find no error in the trial court's determination that Carroll effectively exercised its option to purchase.

3. A & D argues that the trial court erred by adding terms to the lease agreement and the asset purchase agreement that were neither negotiated nor contemplated by the parties to the contract. A & D's argument refers to comments made by the trial judge at the conclusion of the hearing on this matter that A & D had an obligation to give Carroll more detail than it did after Carroll had sent a letter stating that it did not believe it was in default under the lease and requesting more detail regarding the basis for A & D's claim that it was in default. Because we have determined that Carroll was not in default under the lease, we need not address the correctness of the judge's statement that A & D had a duty to provide greater detail of the alleged default to Carroll.

4. A & D's final argument is that the trial court erred in granting Carroll's claim of specific performance because Carroll failed to show that it was in substantial compliance with the lease and purchase agreements at the time it sought specific performance. In addition to asserting that Carroll was in default because of the pipeline installation, A & D asserted that Carroll had not complied with provisions

---

[12] (Emphasis in original.) *Jakel v. Fountainhead Dev. Corp.*, 243 Ga. App. 844, 846 (534 SE2d 199) (2000).

[13] *Martin v. Schindley*, 264 Ga. 142, 143 (442 SE2d 239) (1994).

[14] (Emphasis supplied.) Holmes, Corbin on Contracts, § 11.8, pp. 529-530 (1996).

regarding insurance, taxes, accounts receivable and environmental laws.

However, the trial court found that A & D had waived these additional contentions because it had not asserted them until 18 months after Carroll had filed its action for specific performance.[15] The court noted that A & D did not assert any of these grounds in its original notice of default to Carroll or in its response to Carroll's request for " 'full particulars' " as to how A & D claimed Carroll was in default.

We agree with the trial court's determination that A & D waived the additional alleged grounds of noncompliance. A & D does not dispute the trial court's finding that it did not assert the additional grounds until 18 months after Carroll sought specific performance.

> Forfeitures of rights under valid legal contracts are not favored under [the] law. Our courts are generally quick to seize upon any waiver of a forfeiture, the rule being that the right to rescind for any breach must be asserted promptly, and a waiver of a breach or forfeiture cannot be recalled.[16]

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 29, 2000.

*Lovett, Cowart & Ayerbe, L. Robert Lovett,* for appellants.
*Vaughn, Wright & Stearns, James A. Vaughn, Frederick L. Wright II,* for appellee.

---

[15] Citing *Pearson v. George,* 209 Ga. 938, 944-946 (2) (77 SE2d 1) (1953); *Irvin v. Locke,* 200 Ga. 675, 682 (38 SE2d 289) (1946).
[16] *Forehand v. Perlis Realty Co.,* 198 Ga. App. 165, 170 (2) (400 SE2d 644) (1990).