A08A0199. GILLESPIE v. SAND-ROCK TRANSIT, INC. et al.

(665 SE2d 385)

MIKELL, Judge.

Sand-Rock Transit, Inc., and Willingham Stone Company (the "plaintiffs") sued William A. Gillespie seeking to void an alleged fraudulent transfer to Gillespie by his former business partner, Joan Puckett, of her interest in certain real property and to impose an equitable lien on Gillespie's business interests associated with the property. Following a bench trial, the trial court voided the conveyance by Puckett to Gillespie of her interest in the real property and imposed an equitable lien on 84 percent of all business conducted by Gillespie on or out of the property. Gillespie appeals, claiming that the trial court erred in, among other things, refusing his demand for a jury trial.[1] We conclude that Gillespie was entitled to a jury trial on plaintiffs' fraudulent transfer claim, and reverse.

It is the longstanding rule in this state that certain issues of fact, such as insolvency and intent, are for the jury in actions to set aside a fraudulent transfer, including the alleged fraudulent transfer of real estate.[2] The first published opinions of our Supreme Court also indicate that it was at that time the practice, if not the parties' right, for fraudulent transfer claims to be tried before a jury.[3] The plaintiffs argue that their actions to set aside is an equity case, and therefore Gillespie had no right to demand a jury trial.[4] While the right to set

---

[1] Gillespie also claims the trial court erred (i) in denying his trial motion for an involuntary dismissal, (ii) in imposing a lien on business conducted by Gillespie on or out of the property, and (iii) in denying his motion for a new trial.

[2] See *Merrell v. Beckwith*, 263 Ga. 779, 781 (1) (439 SE2d 488) (1994) (in fraudulent conveyance claim, issues of grantor's insolvency and intent for the jury); *Stokes v. McRae*, 247 Ga. 658, 659 (2) (278 SE2d 393) (1981) (evidence raised issue of intent to defraud, which was for the jury); *Primrose v. Browning*, 56 Ga. 369, 371 (1876) (whether debtor was solvent or insolvent was a question for the jury, and "the court should not have taken upon himself to decide it"). We recognize that *Merrell* and *Stokes* assume the use of a jury but do not expressly hold that one is required. *Primrose* is more explicit and is binding upon us.

[3] See, e.g., *Eastman v. McAlpin*, 1 Ga. 157, 172-173 (1846) (jury charge in claim to set aside conveyance of an insolvent debtor was erroneous).

[4] *Williams v. Overstreet*, 230 Ga. 112, 115 (III) (195 SE2d 906) (1973) (no right to jury trial in action to enforce equitable lien on funds held by defendant).

aside a transfer is equitable in nature,[5] fraudulent conveyance actions have also been described as legal claims.[6]

Neither party suggests that Gillespie had a Georgia statutory right to demand a jury trial, and "the [constitutional] right to trial by jury exists only where the right existed prior to the adoption of the first Georgia Constitution."[7] Thus, notwithstanding what may have been the practice in the nineteenth century, Gillespie's right to a jury trial ultimately rests on whether the right to a jury in fraudulent transfer cases existed before the adoption of the Constitution in 1777. In turn, the answer to that question depends on the English common law and statutes of the late eighteenth century.[8] Persuasive authority indicates that "actions to recover preferential or fraudulent transfers were often brought at law in late 18th-century England"[9] and tried by a jury. Early Georgia cases also rely on 13 Elizabeth, c. 5 (1570), the English statute invalidating fraudulent transfers, which would have had continuing application on May 14, 1777.[10] As our Supreme Court noted in *Westmoreland v. Powell*,[11] 13 Elizabeth, c. 5, was a "statute against frauds."[12] In that case, the Court concluded that the determination of the transferor's fraudulent intent was for the jury.[13] Accordingly, we conclude that there would have also been questions of fact for a jury in a fraudulent transfer action at the time of the adoption of our first Constitution,

---

[5] See *Gilmore v. Hunt*, 137 Ga. 272, 274 (73 SE 364) (1911); *Ehrlich & Bro. v. Shuptrine*, 117 Ga. 882 (45 SE 279) (1903); *DeLacy v. Hurst, Purnell & Co.*, 83 Ga. 223, 233 (9 SE 1052) (1889).

[6] See *Hadlock v. Anderson*, 246 Ga. App. 291, 292, n. 1 (540 SE2d 282) (2000) (Supreme Court declined to hear the appeal because "any equitable issues in the case involving the cancellation of deeds appeared to be ancillary to the legal issue of whether the Hadlocks fraudulently conveyed property"). See also *Acree v. McMahan*, 276 Ga. 880, 883 (585 SE2d 873) (2003) (claim for "fraudulent conveyance of assets" cited as adequate remedy at law in face of reverse alter ego claim in equity) (citation omitted).

[7] (Citations omitted.) *Hill v. Levenson*, 259 Ga. 395 (1) (383 SE2d 110) (1989).

[8] Justice Marshall in *Hill v. Levenson*, supra, says that the right to trial by jury must have existed prior to Georgia's first constitution. Justice Lumpkin in the leading case of *Flint River Steamboat Co. v. Foster*, 5 Ga. 194 (1848) states that the right must have existed prior to the Constitution of 1798. Id. at 207-208. However, Georgia's first constitution was that of 1777. The earlier document did not contain a separate Bill of Rights. But it did in paragraph LXI guarantee trial by jury to remain inviolate, the same phrase used in every Georgia Constitution since. All Georgia constitutions are conveniently available online courtesy of the Carl Vinson Institute of Government at the University of Georgia website at *www.cviog.uga.edu*. The important date for determining English jury trial practice is probably May 14, 1776. See OCGA § 1-1-10 (c) (1).

[9] (Citation omitted.) *Granfinanciera S.A. v. Nordberg*, 492 U. S. 33, 43 (III) (A) (109 SC 2782, 106 LE2d 26) (1989).

[10] See OCGA § 1-1-10 (c) (1).

[11] 59 Ga. 256 (1877).

[12] Id. at 258.

[13] Id.

and the trial court therefore could not deny Gillespie the right to a jury in this case.

Although we agree with plaintiffs that their claim to impose an equitable lien in Gillespie's property was not triable as of right by a jury,[14] Gillespie was nevertheless entitled to demand a jury trial on the fraudulent conveyance claim as to the factual issues in common and between those actions triable as a right by a jury and those that were not.[15] It appears from the complaint that plaintiffs were relying, at least in part, on the facts supporting their fraudulent transfer claim to support their equitable lien claim. It follows that we must reverse on account of the trial court's denial of Gillespie's demand for a jury trial. In light of this conclusion, we need not address Gillespie's remaining claims of error.

*Judgment reversed. Smith, P. J., and Adams, J., concur.*

DECIDED JULY 10, 2008.

*John B. Levy*, for appellant.
*Miller & Martin, William P. Eiselstein*, for appellees.

---

[14] See *Williams*, supra at 115 (III). It is arguable that the plaintiffs' claim of an equitable lien on the business is a demand for on-going equitable relief as to an intangible and hence a non-jury matter. See *Granfinanciera S.A.*, supra, 492 U. S. at 44 (III) (A). This argument would not prevail in view of the Georgia precedents requiring a jury to determine intent. See, e.g., *Westmoreland*, supra.

[15] See *A&D Asphalt Co. v. Carroll & Carroll of Macon*, 247 Ga. App. 77, 79 (1) (543 SE2d 397) (2000).