A99A0736. A & D ASPHALT COMPANY et al. v. CARROLL & CARROLL OF MACON, INC.
(520 SE2d 499)

SMITH, Judge.

This appeal arises out of the purchase by Carroll & Carroll of Macon, Inc. of the business and assets of A & D Asphalt Company. The parties entered into several agreements in connection with the sale, including an asset purchase agreement, a lease agreement (under which A & D leased to Carroll for a term of five years real property on which were located the asphalt plant, shop, and offices purchased), and non-compete agreements executed by each of A & D's shareholders. A & D and Ronnie H. Dykes, one of its shareholders (collectively "A & D"), filed this appeal in the Supreme Court of Georgia from an order entered after a hearing rendering final judgment on one count of a multi-count complaint filed by Carroll and enjoining Dykes from engaging in activities prohibited under the non-compete agreement. The Supreme Court transferred the appeal to this court, finding that as in *Saxton v. Coastal Dialysis &c.*, 267 Ga. 177, 179 (476 SE2d 587) (1996), "the grant of injunctive relief . . . was merely ancillary to the underlying legal issue of whether the trial court properly construed [the non-competition agreement]." We find no error and affirm.

1. A & D first contends the trial court erred in entering final judgment against it on Count 9 of Carroll's complaint, because it did not receive proper notice that the hearing would result in a final determination of Carroll's claim for injunctive relief against Dykes. We find no merit in this contention.

Carroll's complaint, as amended, stated several claims against A & D and sought specific performance, declaratory and injunctive relief, and damages. A hearing was scheduled after Carroll filed a motion requesting the trial court to enter an order granting equitable

relief. The motion sought relief under Count 1 of the first amended complaint, asking for specific performance of A & D's contractual obligation under the lease agreement to convey the leased premises under a purchase option. It also sought relief under Count 9 of the first amended complaint, in the form of an order enjoining Dykes from engaging in activities prohibited under the non-compete agreement executed by him. The trial court issued a rule nisi and order, scheduling a hearing for July 1, 1998, on the motion.

The order was served on A & D on May 7, 1998, and A & D filed its response on June 8, 1998, urging denial of the motion and clearly acknowledging that the hearing scheduled would be an evidentiary hearing. At this hearing, A & D presented evidence and argued the case on the merits. When the parties rested, the court indicated it was prepared to enter a final ruling on the merits of the claim for injunctive relief on Count 9 of the complaint, and A & D did not object.

OCGA § 9-11-65 (a) (2) provides that "[b]efore or after the commencement of the hearing of an application for an interlocutory injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." The trial court's order recites specifically that the court used the authority granted by this Code section and "advanced and consolidated the trial on the merits of the Count Nine claim for injunctive relief with the hearing of Plaintiff's motion." It is well established that a court may do so "if the parties have not objected or have acquiesced. [Cit.]" *Williams v. Tritt*, 262 Ga. 173, 175 (2) (415 SE2d 285) (1992). Although A & D states repeatedly in its briefs on appeal that it objected, the transcript of the hearing shows clearly that A & D's objections were addressed specifically to the trial court rendering a final judgment on the other issue raised by Carroll's motion, specific performance of the purchase option in the lease agreement under Count 1 of the complaint. The trial court's order expressly notes that the issue of specific performance "is still under consideration by the Court and will be addressed in a separate order."

Moreover, the trial judge announced from the bench that it would not render a final judgment at the hearing on the specific performance issue because fact issues remained, but that he intended to "rule . . . today" on the injunction involving the covenant not to compete. The trial court ended this announcement with the question: "All right?" And even after this invitation, no objection was voiced.

A & D acknowledges that it received notice of a hearing on the motion for an injunction and was aware of the issues to be covered at the hearing. Notwithstanding its protestations on appeal, it also understood that the hearing was to be an evidentiary hearing. Compare *Herring v. Standard Guaranty Ins. Co.*, 238 Ga. 261 (232 SE2d

544) (1977) (where rule nisi ordered hearing only on whether equitable accounting should be had, words "other equitable relief" in rule nisi inadequate notice that accounting would be conducted at hearing). A & D presented evidence at the hearing. Because the record thus demonstrates that the parties acquiesced in the court's plan of action, the trial court was authorized under OCGA § 9-11-65 (a) (2) to make a final determination of the merits of the issues. *Williams*, supra. See also *Sapp v. Owens*, 270 Ga. 36 (504 SE2d 665) (1998); *Regency Club v. Stuckey*, 253 Ga. 583, 586 (3) (324 SE2d 166) (1984).

2. In two enumerations, A & D contends the trial court improperly rewrote and "blue pencilled" the non-compete agreement. A & D argues that the court engaged in interpreting a contract that was unambiguous and in disregarding a provision that provided for the agreement's termination. We do not agree.

Paragraph (2) of the agreement in issue provided, among other things,[1] that Dykes could not engage in

> any of the businesses or services engaged in or rendered by A & D within three years prior to the date of closing (including without limitation the operation of an asphalt manufacturing plant, soil remediation plant, asphalt, paving, grading, road base, curb and gutter, sidewalk and storm drainage structure construction) or have any equity or profit interest in any corporation, person, or other entity engaged in any such business.

Paragraph (3) of the agreement provided:

> This covenant not to compete shall be in effect until the earlier of: (i) Five (5) years from the date of the execution hereof, or (ii) the date [Carroll, or] its successors [in] interest, ceases operating the business, in whole or in part, on the real property described in Exhibit "A" or passes out of existence.

The record shows that Dykes engaged in activities prohibited under the agreement. A & D did not dispute this allegation; instead, it argued at the hearing and continues to argue on appeal that Dykes's activities were no longer prohibited. A & D contends the non-compete agreement terminated when Carroll sold the soil remediation plant because Carroll "ceased operating the business . . . in part."

---

[1] The agreement also prohibited Dykes from soliciting any business from A & D's clients and from soliciting for employment any person who had been employed by A & D within one year prior to the closing.

We cannot agree with A & D's argument that because Carroll no longer engages in some of the activities enumerated in paragraph (2) (a) of the agreement, it has "cease[d] operating the business, in . . . part" within the meaning of paragraph (3) of the agreement. The activities listed in paragraph (2) (a) are those Dykes is prohibited from conducting during the term of the agreement; they do not define the term "business" in paragraph (3). And the testimony at the hearing showed clearly that Carroll had not ceased operating its business, either in whole or in part. Dykes acknowledged, in fact, that Carroll was still very much actively engaged in the asphalt business. It merely sold the equipment used for soil remediation because that equipment was in poor repair and was causing dust control problems that interfered with the asphalt plant. At all times since purchasing A & D's assets, Carroll has continued to operate a business on the leased property. Nothing in the record indicates that the trial court rewrote or "blue pencilled" the agreement. The record does show that the trial court correctly declined to adopt A & D's strained and unreasonable construction of it.

3. A & D also maintains the trial court erred in proceeding with a full trial in violation of its right to a trial by jury, arguing that the court decided questions of fact, without indicating what those fact issues might be.

It was clear at the hearing, once evidence had been presented, that the issue of whether Dykes had engaged in activities prohibited under the non-compete agreement was not in dispute. Both sides agreed that he had. See Division 2, supra. The only question for resolution was whether the agreement had been terminated and was therefore unenforceable, as urged by A & D.

The construction of a contract is a question of law for the court. *Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 700 (342 SE2d 308) (1986). "It is not the province of the jury to construe unambiguous contracts. [Cit.]" *Allstate Ins. Co. v. Brannon*, 214 Ga. App. 300, 301 (447 SE2d 666) (1994). When the language of a contract is plain and unambiguous, the court must afford it its literal meaning, despite a party's contention that he had a different understanding of its meaning. *Cotton States Mut. Ins. Co. v. Smelcer*, 212 Ga. App. 376 (441 SE2d 788) (1994). The trial court found that the provisions in issue in this contract were unambiguous and that the agreement had not terminated, as contended by A & D. Consequently, no issues remained for jury resolution, and it follows that the trial court did not err in making a final ruling on the merits.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED JULY 6, 1999 — CERT. APPLIED FOR.

*Linwood R. Lovett, Paul R. Ayerbe*, for appellants.
*Vaughn, Wright & Sterns, James A. Vaughn, Frederick L. Wright II*, for appellee.