A00A1998. CFUS PROPERTIES, INC. et al. v. THORNTON.
(539 SE2d 571)

ELDRIDGE, Judge.

CFUS Properties, Inc. d/b/a Gwinnett Place Mall, Urban Retail Properties Company, f/k/a JMB Realty Corporation, CPI-Gwinnett Corporation, and JMB Realty Corporation, as owners or occupiers of realty where plaintiff Cynthia M. Thornton fell, appeal from the judgment of the trial court, after a bench trial on December 13, 1999, in which they were held jointly and severally liable for $88,000 for compensatory damages and $13,302.61 for special damages. There being some evidence to support the findings of fact by the trial court, this Court cannot find that such findings were clearly erroneous. Therefore, we affirm.

On March 16, 1996, plaintiff fell in a pothole in the parking lot of Gwinnett Place Mall, between Macy's and Sears. She had not seen the pothole, because it was full of rainwater and there were rainwater puddles all over the parking area. When she arrived, it was not raining, but before she left, a heavy downpour occurred. She and her mother waited until the rain slackened before walking to their car. Plaintiff suffered a severe fracture to her right foot when she fell. The injury was disabling and ultimately required surgery to remove bone fragments. The medical expenses caused by the injury were $13,302.61.

Evidence at trial showed that the pothole pre-existed the fall for some time because of its size. In December 1995, the owners, operators, and managers of Gwinnett Place Mall paid for the repair of potholes on Mall Ring Road and in the parking lot. Prior to plaintiff's injury on March 16, 1996, the defendants did not conduct an inspection of the parking lot. After plaintiff's fall, Mrs. Eunice Thornton, plaintiff's mother, pointed out the pothole, which caused her daughter's injury to the Mall security officer. The pothole was reported by security to the general manager of the Mall. Photographs taken two weeks after the injury showed the condition and size of the pothole.

1. The defendants contend that the trial court erred in finding

that they had constructive knowledge of the existence of the large pothole. We do not agree.

A trial court's findings in a nonjury trial shall not be set aside unless clearly erroneous. OCGA § 9-11-52 (a); *Mut. Ins. Co. of N.Y. v. Dublin Pub*, 190 Ga. App. 94, 95 (378 SE2d 497) (1989). The "clearly erroneous" test is the "any evidence" rule. If there is any evidence to support the findings of fact by a trial court sitting without a jury, then the appellate court affirms without interference with or disturbing such factfindings. *Kimbrell v. Effingham Bd. of Tax Assessors*, 191 Ga. App. 544 (382 SE2d 388) (1989).

The evidence showed that the pothole was deep enough for it to hold the water which hid its depth and large enough for the plaintiff to put her foot in and to catch it. In fact, the substantial size of the pothole would allow the trier of fact to reasonably infer that the hole existed for sufficient time to become enlarged to the point that it was four or more women's shoe lengths long and wide as shown in the photographs. The pothole from the photographs appeared to be more than an inch in depth and three to four feet in circumference.

Failure to discover the defect through the exercise of reasonable care in inspecting the premises gives rise to constructive knowledge where the owner or occupier had an opportunity to discover the dangerous condition and to remedy it. *Food Giant v. Cooke*, 186 Ga. App. 253, 254 (1) (366 SE2d 781) (1988). However, there must be some evidence, direct or circumstantial, that indicates that the condition was allowed to exist for a sufficient time for an inspection to discover it and to remove the danger. *Alterman Foods v. Ligon*, 246 Ga. 620, 622-623 (272 SE2d 327) (1980); *Food Giant v. Cooke*, supra at 255; *Boatright v. Rich's, Inc.*, 121 Ga. App. 121, 122 (5) (173 SE2d 232) (1970). Substantial passage of time may be inferred from the condition of the pothole in depth and breadth by passage of many cars over it to cause such condition as circumstantial evidence. "The length of time which must exist to show that the defendant had an opportunity to discover the defect will vary with the circumstances of each case[, i.e.,] nature of the business, size of the [premises], the number of customers, the nature of the dangerous condition, and its location." (Citations and punctuation omitted.) *Colonial Stores v. Turner*, 117 Ga. App. 331, 333 (160 SE2d 672) (1968); see also *Alterman Foods v. Ligon*, supra at 623. Thus, the trial judge could infer constructive knowledge from the size and location of the pothole, because any inspection would have revealed the pothole from its size and location.

The photographs taken several weeks later were identified as the same pothole without change in its condition. Further, Mrs. Thornton testified that she saw the pothole after her daughter's fall and pointed its existence out to the Mall security officer as the cause of her daughter's fall. Michael Lowery, the general manager of the

Mall, on cross-examination, admitted that an incident report was immediately made to the general manager's administrative assistant reporting the pothole and that it caused plaintiff's fall.

In attempting to attack the inference of a substantial length of time for the pothole to form and reach the size shown in the photographs, the general manager gave his opinion that potholes can occur in a short period of time, i.e., overnight. Thus, the trial judge had the discretion as trier of fact to disbelieve Lowery's opinion as a layperson as to how long the pothole took to form. *Thompson v. Maslia*, 127 Ga. App. 758, 764-765 (4) (195 SE2d 238) (1972). The trier of fact is not bound to believe opinion evidence. *Reynolds Constr. Co. v. Reynolds*, 218 Ga. App. 23, 25 (459 SE2d 612) (1995); *Wilson v. Professional Ins. Corp.*, 151 Ga. App. 712, 713-714 (261 SE2d 450) (1979).

Although Lowery had been the general manager for the prior 11 years, there was no foundation laid as to his special expert knowledge, through training, skill, or experience to render an expert opinion on the time necessary for formation of potholes. Absent qualification as an expert witness and tender of the witness as an expert, a witness' opinion is that of a layperson. *Stephens v. State*, 219 Ga. App. 881, 883 (1) (467 SE2d 201) (1996). Lowery did not testify that he had personal knowledge of pothole formation derived from personally observing pothole formation; therefore, Lowery's opinion as to the time required to form a pothole came only from reports made to him by others and what others told to him; thus, he formulated his own opinion based upon hearsay to determine such factors and time necessary for pothole formation, which renders his opinion inadmissible so that the trial judge would not have considered such testimony. *Avant Trucking Co. v. Stallion*, 159 Ga. App. 198, 200 (1) (283 SE2d 7) (1981). The opinion of a nonexpert witness may be received in evidence if: (1) he observed the matter in issue; (2) he cannot adequately state or recite the facts so fully and adequately that the trier of fact can be put completely in the witness' place to draw the inference; and (3) the witness can testify as to the facts and circumstances upon which the opinion is based so that the factfinder can determine the opinion's weight and credibility. *Johnson v. Knebel*, 267 Ga. 853, 855-857 (1), (2) (485 SE2d 451) (1997); *Pride v. State*, 133 Ga. 438, 440-443 (1) (66 SE 259) (1909). In this case, these were not satisfied.

"[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" when the trial court hears the case at a bench trial. See OCGA § 9-11-52; *Bell v. Cronic*, 248 Ga. 457, 459 (2) (283 SE2d 476) (1981).

> A pothole can literally occur overnight , depending upon the weather, traffic conditions. . . . [A] huge number of vehicles . . . can hit a weak area and generate a pothole within

hours. There's really no way to tell. Although it looks like a fresh pothole, there's evidence of previous repair work in the general area. And if there was heavy rains during the previous period, it could have occurred at any time.

Thus, the trier of fact was free to accept or to reject, in whole or in part, opinion evidence of Lowery, either as from a layperson or expert, because the weight and credibility to be given opinion evidence are within the discretion of the trier of fact, which the trial court properly did as an inadmissible opinion based upon hearsay and speculation without personal observation. *Reynolds Constr. Co. v. Reynolds*, supra.

2. Defendants contend that the trial court erred in admitting the photographs of the pothole taken several weeks after the injury. We do not agree.

Plaintiff testified that the photographs were of the pothole where she fell at Gwinnett Place Mall, were accurate, and were taken a couple of weeks after the injury. While on cross-examination, the plaintiff admitted that she had not seen the pothole on the day of her injury, but she knew exactly where the pothole was located in relation to Sears, the entrance, and the parking aisle to identify it.

The foundation was laid showing that it was a fair and truthful representation of what it purported to depict, and its admissibility was within the sound discretion of the trial court. *McCoy v. State*, 190 Ga. App. 258, 262 (6) (a) (378 SE2d 888) (1989). Whether that foundation was adequate or not was in the sound discretion of the trial court. *Turner v. State*, 181 Ga. App. 531 (353 SE2d 13) (1987); see also *McCoy v. State*, supra at 262. The trial court properly overruled the objection as to admissibility and correctly noted that any contradictions in plaintiff's testimony as to her knowledge of the pothole went to weight and credibility and not to the admissibility of the photographs.

3. Defendants contend that the trial court erred in admitting evidence of plaintiff's special damages and in finding such amount as special damages. We do not agree.

Where the plaintiff testifies regarding the nature of her injuries and the treatment received and her medical expenses and a treating physician testifies as to the injury, treatment, and medical bill, the trier of fact may determine that the expense was reasonable from all the facts and circumstances without a witness expressing the opinion that such expense was reasonable. *Limbert v. Bishop*, 96 Ga. App. 652, 655-656 (5) (101 SE2d 148) (1957); *Ga. Power Co. v. Clark*, 69 Ga. App. 273, 278 (c) (25 SE2d 91) (1943). The plaintiff or a member of the family or the person responsible for the care and treatment can identify medical bills for treatment, and expert testimony as to the

charges being reasonable and necessary is not required. OCGA § 24-7-9; *Lester v. S. J. Alexander, Inc.*, 127 Ga. App. 470, 471-472 (1) (193 SE2d 860) (1972).

Defendants' real objection is that plaintiff failed to lay a proper foundation for admission of the medical expenses for the operation on her foot, because the podiatrist operated on her foot to remove numerous bone fragments that had migrated from the fracture site and to remove an unrelated neuroma in her foot at the same time as an ancillary part of the operation. "Where a party sues for damages, he has the burden of proof of showing the amount of loss in a manner in which the jury or the trial judge in nonjury cases can calculate the amount of the loss with a reasonable degree of certainty. An allowance for damages cannot be based on guess work. [Cit.]" *Big Builder v. Evans*, 126 Ga. App. 457, 458 (2) (191 SE2d 290) (1972). In his or her sound discretion, a trial judge can properly exclude such a medical bill from evidence for the plaintiff's failure to segregate out the unrelated expenses from the medical expenses that were the necessary result of the tort. *Lester v. S. J. Alexander, Inc.*, supra at 472; see also *Jordan v. Hagewood*, 133 Ga. App. 958, 959 (2) (213 SE2d 85) (1975).

However, in this case the trial judge heard testimony from the podiatrist who performed the surgery and who testified that the operation was necessary to remove the bone fragments and that surgery was possibly required for removal of the neuroma if injections did not work; therefore, he removed the neuroma as an ancillary procedure while he was performing the surgery. The defendants never asked the doctor in cross-examination if he charged extra to remove the neuroma and what part of the charge was for that 30-minute extra procedure or why he did the ancillary procedure.

The case of *Hossain v. Nelson*, 234 Ga. App. 792, 794 (4) (507 SE2d 243) (1998) requiring that a proper foundation for the medical bills be laid is distinguishable from this case in that the plaintiff there "admitted that he did not and could not compile the totals" of medical expenses caused by the tort, "[n]or did he provide specific testimony substantiating the various subtotals." Id. at 794. Further, this was not a part of the holding of the case but dicta, telling how to deal with such issue on retrial. Here, however, plaintiff gave the total medical expenses, described the treatment, testified that the expenses were incurred as a result of the injury, were necessary, and had the treating podiatrist testify.

"Where evidence is heard by the judge alone and without the intervention of a jury, it will be presumed that the judge considered only legal and admissible evidence, unless the record clearly indicates that the contrary is true. [Cit.]" *Barger v. Barger*, 238 Ga. 334, 335-336 (9) (232 SE2d 567) (1977). Where the trial court alone tries

the case, the presumption is that the judgment was rendered only upon competent and legal evidence before him, and even if illegal evidence was admitted, it does not require a new trial. *United Rentals Systems v. Safeco Ins. Co.*, 156 Ga. App. 63, 65-66 (1) (b) (273 SE2d 868) (1980); *Nellinger v. Atlanta Baggage &c. Co.*, 109 Ga. App. 863, 866 (3) (137 SE2d 566) (1964); see also *Greene County v. North Shore Resort at Lake Oconee, LLC*, 238 Ga. App. 236, 240 (1) (517 SE2d 553) (1999).

4. The defendants contend that the trial court erred in finding each of the defendants liable. We do not agree.

CFUS Properties had an office in the Mall and was the managing partner in Gwinnett Place Associates, L.P. Urban Retail Property Company managed the Mall. Gwinnett Place Associates, L.P. owned the Mall. CPI-Gwinnett Corporation was a partner in Gwinnett Place Associates, L.P. JMB Realty Corporation had a prior interest in the Mall, which was taken over by CFUS Properties but had an insurable interest in the Mall. Thus, there existed some evidence to support joint and several liability, because all the defendants had a right of possession and control over the premises with the evidence showing none having a superior right. *Scheer v. Cliatt*, 133 Ga. App. 702, 704 (2) (a) (212 SE2d 29) (1975).

Since there was some evidence to support the judgment, then the appellate court should not interfere with the trial court's judgment after a nonjury trial. *Pinkerton & Laws Co. v. Atlantis Realty Co.*, 128 Ga. App. 662, 665 (1) (197 SE2d 749) (1973). The judgment was not clearly erroneous; therefore, it should not be set aside. *Mut. Ins. Co. of N.Y. v. Dublin Pub*, supra; *Davis v. Hosp. Auth. of Fulton County*, 167 Ga. App. 304, 305 (306 SE2d 306) (1983).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 20, 2000.

Shapiro, Fussell, Wedge, Smotherman & Martin, Robert B. Wedge, Tracey Walker, for appellants.
Webb & Webb, Michael S. Webb, for appellee.