A04A2115. CHARTER DRYWALL ATLANTA, INC. v. DISCOVERY TECHNOLOGY, INC. et al.

(610 SE2d 147)

MILLER, Judge.

Charter Drywall Atlanta, Inc. (Charter Drywall) sued Discovery Technology, Inc. (Discovery) and Barbara Huffman after being fired from a contracting job to install drywall. Discovery Technology and Huffman counterclaimed for attorney fees and for the cost of hiring a new contractor to complete the work left unfinished by Charter Drywall. Following a bench trial, the trial court ruled in favor of Discovery and Huffman, awarding them damages (minus the amount owed to Charter Drywall for its work) and attorney fees. On appeal, Charter Drywall asserts several enumerations of error, challenging both the trial court's findings and its damages and attorney fee awards. We discern no error and affirm.

Viewed in the light most favorable to the trial court's ruling, the evidence reveals that Discovery hired Charter Drywall to install drywall in a house being constructed on property owned by Huffman. The drywall installation was scheduled to take place in three stages, one for each floor of the house. One floor was supposed to be completed before the next could be started. Since the house was going to be shown in the International Home Builders Show, with several sponsors providing appliances, the parties agreed that the work on the house would be completed before February 8, 2002.

Before work began, Charter Drywall agreed to use rounded cornerbeads to give the drywall used in the corners of the house a smoother appearance. Discovery did not agree to pay any additional money for the use of these cornerbeads.

Charter Drywall failed to install the drywall and the rounded cornerbeads properly, did not do the work in individual stages, and also failed to complete or correct the work for which it was responsible before February 8, 2002. Discovery sent several letters to Charter Drywall in an attempt to get Charter Drywall to complete the work. In these letters, Discovery informed Charter Drywall of several areas in which it had damaged the house, and informed Charter Drywall that it had placed Discovery in a tenuous position with its sponsors for the International Home Builders Show. Discovery nevertheless entered the house in the International Home Builders Show, but the home showing was substandard in light of the unfinished drywall work in the house. In an attempt to salvage its relationship with its sponsors, Discovery later entered the house in a different home show at a cost of $10,000 for the entry fee.

In a March 5, 2002 letter terminating Charter Drywall from the project, Discovery described Charter Drywall's work as "an embarrassment" and "a total failure." Despite this characterization, Discovery still offered to pay Charter Drywall the difference between the cost of hiring a new contractor to complete the work and the previously agreed upon cost being charged by Charter Drywall. Charter Drywall responded with an e-mail threatening litigation and threatening to foreclose on the property, and rejected Discovery's offer. Just before filing suit, Charter Drywall sent another e-mail to Discovery's principal, telling the man that his wife, Barbara Huffman, was "going to be mad at [him]" because Charter Drywall was suing her as well. Charter Drywall also warned in this same e-mail that Discovery should "hold on" because the litigation would "get quite expensive." Charter Drywall took the position that it would settle for nothing less than its expenses and legal fees and all contract amounts that it felt were undisputed, and threatened to pursue punitive damages. Charter Drywall also stated that it took the dispute with Discovery "personally" and promised to pursue the matter "with an open checkbook."

Discovery hired AMC Drywall to repair and complete the work left unfinished by Charter Drywall. The owner of AMC Drywall noticed that much of the work done by Charter Drywall needed to be fixed, and even went so far as to state under oath that Charter Drywall had done a "crappy" job on the house. Discovery paid AMC Drywall $19,642.87 for the drywall installation and repair. This price did not include the cost of painting the basement of the house. A Charter Drywall representative later testified that drywall work in the garage, which Charter Drywall did not have an opportunity to do, would have cost an additional $600.

Following a bench trial, the trial court concluded that (1) Charter Drywall had breached its contract with Discovery, which caused

Discovery to hire another company to "repair, correct, and complete the [Charter Drywall] job" at a cost of $19,642.87; (2) Discovery was entitled to $10,000 in consequential damages for the cost of entering the house in another home builders show after the failed showing in the International Home Builders Show; (3) the reasonable value of the drywall work in the garage was $600; and (4) Discovery was entitled to $7,356.92 in attorney fees in light of Charter Drywall's stubborn litigiousness. From this total, amounting to $37,599.79, the court subtracted the $31,573 contract price previously agreed to by Discovery and Charter Drywall, leaving Charter Drywall owing Discovery the sum of $6,026.79. Charter Drywall appeals.

1. In four enumerations of error, Charter Drywall challenges the trial court's findings that (a) Charter Drywall breached its contract with Discovery, (b) Charter Drywall was not entitled to be paid extra for the use of rounded cornerbeads in the drywall installation, (c) the set-off damages to Discovery did not include painting and other extra services provided by AMC Drywall, and (d) Discovery was entitled to $10,000 in consequential damages. We find that none of these assertions has merit.

> On appellate review of a bench trial, the factual findings shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. In bench trials, the judge sits as trier of fact and the court's findings are analogous to a jury's verdict and should not be disturbed if there is any evidence to support them.

(Punctuation and footnote omitted.) *Zhou v. LaGrange Academy*, 266 Ga. App. 445, 449 (1) (597 SE2d 522) (2004).

As discussed above, there was evidence presented at the bench trial that Charter Drywall breached its contract with Discovery by failing to complete the drywall installation in a timely and workmanlike manner. Further, there was evidence that Discovery never agreed to pay additional money for the use of rounded cornerbeads in the drywall installation. Evidence also supported the trial court's conclusion that the $19,642.87 charged by AMC Drywall to complete the work did not include painting and other extra services outside of the drywall installation. Since there was evidence to support the trial court's findings and conclusions, they will not be disturbed here. See *Zhou v. LaGrange Academy*, supra, 266 Ga. App. at 450 (1).

Similarly, evidence supported the trial court's conclusion that Discovery was entitled to consequential damages. The parties understood that the drywall installation needed to be finished before the International Home Builders Show, but Charter Drywall failed to

complete the work by the deadline. Discovery presented evidence that it entered the second home show in order to mitigate its damages from a weak showing with an incomplete house in the first show. The trial court could conclude from the evidence that the damages flowed from Charter Drywall's breach of contract, and that Discovery was thus entitled to the $10,000 in consequential damages to be made whole. See *Bauer v. North Fulton Med. Center*, 241 Ga. App. 568, 572 (3) (b) (527 SE2d 240) (1999) (a party is entitled to breach of contract damages that would place him in position of contract having been fulfilled where damages flow from the breach and are contemplated as a probable result of the breach). The trial court's conclusion will therefore not be disturbed on appeal.

2. Charter Drywall urges that the trial court erred in awarding attorney fees to Discovery. We disagree.

Attorney fees are recoverable under OCGA § 13-6-11 when a party has acted in bad faith, has been stubbornly litigious, or has subjected the other party to unnecessary trouble and expense. *Clearwater Constr. Co. v. McClung*, 261 Ga. App. 789 (584 SE2d 61) (2003); see also *Gardner v. Kinney*, 230 Ga. App. 771, 772 (498 SE2d 312) (1998) (a defendant may seek attorney fees pursuant to OCGA § 13-6-11 when he has asserted an independent counterclaim for relief). Questions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense are generally questions for the trier of fact to decide. *Clearwater Constr. Co.*, supra, 261 Ga. App. at 789. An award of attorney fees under OCGA § 13-6-11 will be affirmed if there is any evidence to support it. Id.

Here, there was evidence to support the trial court's conclusion that Charter Drywall was stubbornly litigious in its dealings with Discovery from the moment that problems arose with the drywall work through and including the filing of Charter Drywall's lawsuit. Rather than negotiate for some payment other than the full contract price after being fired for doing substandard work, Charter Drywall took the matter "personally" and vowed to engage in protracted litigation. There was no bona fide controversy as to Charter Drywall's failure to complete the work adequately, and it is undisputed that Discovery offered to pay Charter Drywall the difference between the original contract price and the cost of hiring a new contractor to complete Charter Drywall's unfinished work. Evidence of Charter Drywall's insistence on pursuing protracted litigation even in the absence of such controversy thus supported the trial court's decision to award attorney fees to Discovery. See *Parking Co. of America v. Sucan*, 195 Ga. App. 616, 618 (3) (394 SE2d 411) (1990) (fee award for stubborn litigiousness proper where no bona fide controversy existed and where defendant adopted "so sue me" attitude instead of settling claim or fulfilling promises to plaintiff).

3. Since the trial court did not err in ruling in favor of Discovery and in concluding that Charter Drywall was not entitled to money damages, Charter Drywall's claim that it was entitled to a lien on Huffman's property is without merit.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 4, 2005.

*Rachelson & White, Ira L. Rachelson, Fields, Howell, Athans & McLaughlin, Andrew R. Diamond*, for appellant.

*Albert E. Jones*, for appellees.