**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**August 30, 2012**

# In the Court of Appeals of Georgia

A12A0927. ALPHA NURSING SERVICES, INC. et al. v.
   VICKERY.

MIKELL, Presiding Judge.

Following a bench trial, Alpha Nursing Services, Inc., and Saheed Ashogbon appeal from the judgment entered in favor of Dr. Samuel Vickery on his claims for specific performance of a lease/buy contract for an office building, and for attorney fees.

The evidence was that Saheed Ashogbon operated several businesses involved in the provision of home care and home healthcare services to Medicare recipients. These businesses were Alpha Nursing Services, Alpha Healthcare Systems, Alpha Nursing Training Institute, and Alpha Durable Medical Supply. According to Ashogbon, all of these businesses operated from 777 Cleveland Avenue, Atlanta,

Georgia, with the only difference in their addresses being different suite numbers. All of these businesses were incorporated in Georgia and all had the same officers, boards of directors, and shareholders.

In 2008, Ashogbon was looking for office space in Commerce, in Jackson County, because he had filed an application to expand his business into northeast Georgia, including Jackson County. He saw a "for sale" sign in front of the building at 1981 North Elm Street, which had housed Dr. Samuel Vickery's medical practice for decades until his retirement in October 2007. Ashogbon contacted Dr. Vickery and it is undisputed that, on February 19, 2008, a "Deed to Secure Debt with Power of Sale (Short Form) No. 140" was prepared by Dr. Vickery and signed by Ashogbon and Dr. Vickery. The body of the document stated:

> The following agreement is a rent buy agreement between Samuel A. Vickery, M.D. and Mr. Saheed Ashogbon, President/CEO of Alpha Nursing Services, Inc. for the tract or parcel of improved property [property legal description]. *The property is being leased for one year at the rate of $1,000.00 per month for twelve months at which that time the property will be purchased for $150,000. . . .* The first month's rent will be due at the signing of this contract and on the 5th day of each month thereafter. If renter buyer of this property does not pay due rent within fifteen days of due date this contract will be declared null and

2

void and the business will be asked to vacate the property. (Emphasis supplied.)

The signatures of Dr. Vickery and Ashogbon were witnessed by Oduola Adegoke and Michael Awosanya, associates of Ashogbon, and Shirley Martin, a long time employee of Dr. Vickery. Martin heard Ashogbon say that he was going to lease the property for a year and, after that year, buy it. Neither Adegoke nor Awosanya testified. Ashogbon acknowledged that he signed the document and that he read it before he signed it.

Martin last worked in Dr. Vickery's office the last week of February, 2008. At that time, there were no problems with bugs, rodents, or mold. Mike Vickery, a second cousin of Dr. Vickery, ran a pest control company and had treated the office building monthly during Dr. Vickery's occupancy of it. He was unaware of any infestation problems on the property. Someone from Alpha Nursing Services contacted Orkin Pest Control seeking treatment of Suite 100 at 1981 North Elm Street in Commerce in July 2008. A service agreement was signed on July 22, 2008, so that service could begin. When Orkin started servicing the building, no notation of any type of infestation was noted. Between July 23, 2008 and January 8, 2009, Orkin

serviced the property four times. Orkin terminated the contract because Alpha Nursing failed to pay.

The city of Commerce requires that buildings be inspected when the occupant changes and a city inspector did that before Alpha Nursing Services occupied the building. No insect infestation or mold problems were found.

Ashogbon acknowledged that a flyer was prepared by his companies and distributed from the Atlanta offices, reflecting that Alpha Nursing Services, Inc., and Alpha Healthcare System, Inc., were operating an office at 1981 North Elm St., Commerce, and were hiring certified nursing assistants, registered nurses, and van drivers. The Commerce address was listed on the website of Alpha Nursing and Alpha Healthcare as one of its offices when Alpha Nursing applied for its expansion into Jackson County. Also, the Commerce phone directory contained listings at that address for both Alpha Nursing and Alpha Healthcare Systems.

Because Ashogbon was out of the country and did not appear for trial, Badetito Obafemi, the accountant and Assistant CEO for Alpha Nursing Services, Inc., Alpha Healthcare Systems, Inc., and Alpha Durable Supply, represented Alpha Nursing Services, Inc., at trial. Obafemi acknowledged that, although all corporate minutes had been requested during discovery and that he had seen some minutes, none were

4

produced by Alpha Nursing. He also acknowledged that no one was going to testify concerning any mold or other health hazard presented by the building.

A letter, dated January 29, 2009, and signed by Awosanya on "Alpha Nursing Services, a Division of Alpha Healthcare System, Inc." letterhead, was sent to Dr. Vickery stating that the 1981 North Elm Street building was being vacated due to mold infestaion. A second undated letter, also signed by Awosanya on "Alpha Nursing Services, Inc. & Healthcare Systems" letterhead, was sent to Dr. Vickery seeking a release of lease based on mold, infestation of fleas and rodents, and HVAC problems. Appellants failed to pay the remaining rental payments and did not purchase the property.

> On appellate review of a bench trial, the factual findings shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. In bench trials, the judge sits as trier of fact and the court's findings are analogous to a jury's verdict and should not be disturbed if there is any evidence to support them.[1]

---

[1] (Footnote omitted.) *Zhou v. LaGrange Academy*, 266 Ga. App. 445, 449 (1) (597 SE2d 522) (2004).

1. Our review has been hindered by appellants' filing of numerous compound enumerations of error as well as enumerations which are unclear and unsupported by any citation of authority in violation of this Court's rules.[2] We remind counsel that

> [o]ur requirements as to the form of appellate briefs were created not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court; a party will not be granted relief should we err in deciphering a brief which fails to adhere to the required form.[3]

2. In enumerations 1, 2, and 5, appellants argue that the trial court erred in finding that venue was proper in Jackson County, in failing to transfer the case to Fulton County, and in concluding that "venue is proper in Jackson County in regards to Alpha Nursing Services, Inc. in regards to this lawsuit." They are addressed together.

---

[2] See *Currid v. DeKalb State Court Probation Dept.*, 274 Ga. App. 704, 706 (1) (618 SE2d 621) (2005).

[3] (Punctuation and footnote omitted.) Id.

In suits found on contracts, venue is proper in the county where the subject contract was made or to be performed if the corporation has an office and transacts business in that county.[4]

All three of these enumerations are premised on the appellants' disagreement with the trial court's factual conclusions that Alpha Nursing Services, Inc., had an office and did business in Jackson County; that Ashogbon failed to observe any corporate formality with regard to Alpha Nursing; and that Ashogbon was the alter ego of Alpha Nursing. These factual findings are not clearly erroneous and these three enumerations are without merit.[5]

3. The third enumeration is that the "trial court erred in finding that the plaintiff made a mistake in suing Alpha Healthcare instead of Alpha Nursing."

While Alpha Healthcare was named in the original complaint, the trial court entered an order allowing substitution of Alpha Nursing for Alpha Healthcare following a hearing on the defendants' motion to dismiss.

---

[4] OCGA § 14-2-510 (b) (2).

[5] See *Mariner Healthcare v. Foster*, 280 Ga. App. 406, 411 (4) (634 SE2d 162) (2006).

There is no written finding by the trial court that plaintiff made a mistake, only colloquy between court and counsel. Neither is there any specific ruling contained in any order of the court to this effect. Therefore, there is nothing presented by this enumeration for our review.[6]

4. In enumerations 4 and 6, appellants argue that the trial court erred in concluding that Alpha Nursing was a party to the alleged contract and that appellants owe seven months rent.

---

[6] (Citations omitted.) *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999). This Court and the Court of Appeals are courts of review. 1983 Ga. Const., Art. VI, Sec. V, Par. III; Art. VI, Sec. VI, Par. II. As appellate courts, we are courts for the correction of errors of law made by the trial courts. *Mills v. State*, 188 Ga. 616, 623 (4 S.E.2d 453) (1939). In appellate practice, an error of law is "a false or mistaken conception or application of the law. Such a mistaken or false conception or application of the law to the facts of a cause as will furnish ground for a review of the proceedings…." Black's Law Dictionary (5th ed.). An error of law has as its basis a specific ruling made by the trial court. In order for a Georgia appellate court to review a trial court ruling for legal error, a party must set forth in the enumeration of errors the allegedly erroneous ruling. OCGA § 5-6-40.

These are arguments regarding the facts found by the trial court and we cannot say that the trial court's findings were clearly erroneous.[7]

5. Appellants argue, in their seventh enumeration, that the trial court erred in ruling that the "alleged contract constituted a contract to buy and a contract to sell when ordinary reading of [it] does not so lend itself. Further the court concluded that the alleged contract is enforceable despite a clear and unambiguous language in the contract to the contrary."

> [T]he construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first

---

[7] *Zhou*, supra.

attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2. [8]

Appellants' argument is centered on the provision of the document which states that "[i]f the renter buyer of this property does not pay due rent within fifteen days of the due date this contract will be declared null and void and the business will be asked to vacate the property." Having considered this argument, the trial court "implicitly finds that this right to declare the contract void was vested in the Plaintiff-Owner and that the Plaintiff never declared the contract void and thus permissibly waived this term of the contract."

We find the trial court's analysis of this provision consistent with the rules of contract construction and find no error.

6. In their eighth and ninth enumerations, appellants argue that the trial court erred in entering a judgment of specific performance where there is an adequate remedy at law and where specific performance "is at best an exercise in futility." They are addressed together.

---

[8] (Citations and punctuation omitted.) *Woody's Steaks, LLC v. Pastoria*, 261 Ga. App. 815, 817 (1) (584 SE2d 41) (2003).

Since at least 1873, it has been the law of this state that "in written contracts for land, where they are certain, fair and capable of being performed, equity will decree their performance."[9] We find no error in the trial court's ruling.

7. Appellants' tenth enumeration sets out no ruling made by the trial court and contains no authority in support of their position, presenting nothing for our review.[10]

8. In their eleventh and twelfth enumerations, appellants argue that the trial court erred in awarding attorney fees and costs and in finding plaintiff's evidence of these fees and costs adequate.

The trial court awarded attorney fees and costs based on its factual finding that Ashogbon never intended to go through with the purchase of the office building and, since he was also found to be the alter ego of Alpha Nursing, liability for the attorney fees and costs is joint. As set out above, there is evidence to support these findings and we find no error.

Also, we find evidence to support the trial court's compilation of the attorney fees and costs and there was no error in this regard.

---

[9] (Citations and punctuation omitted.) *Forsyth v. McCauley*, 48 Ga. 402, 405 (1873). See also *CDM Custom Homes v. Windham*, 280 Ga. App. 728, 731-732 (1) (634 SE2d 780) (2006).

[10] See *Felix*, supra.

9. The thirteenth enumeration is that the trial court erred in not dismissing the case for want of prosecution when Dr. Vickery was not present at trial due to his being in a nursing home.[11]

No motion to dismiss for want of prosecution or any other objection to the absence of Dr. Vickery was voiced at trial and we will not consider this issue for the first time here.[12]

10. In their fourteenth and fifteenth enumerations, appellants contend that the trial court abdicated its role as a neutral and impartial arbiter and was prejudiced and biased towards Ashogbon.

No motion to recuse was filed below, nor were any objections made on the record to the trial court's impartiality. Therefore, any such objections have been waived.[13]

11. Finally, appellants complain of the trial court's denial of their renewed motion for judgment on the pleadings.

---

[11] He was represented at trial by his daughter, a physician, who had Dr. Vickery's power of attorney for business matters.

[12] See *Hunter v. Hunter*, 289 Ga. 9, 10, n. 1 (709 SE2d 263) (2011).

[13] Id.

Appellants' initial motion for judgment on the pleadings was denied by the trial court's order of January 20, 2011. The renewed motion, filed July 20, 2011, was denied by the trial court's order of August 2, 2011. The bench trial was conducted on August 22 - 23, 2011, and judgment entered on September 13, 2011. Given that appellants did not obtain a certificate of immediate review of the orders entered prior to final judgment, and given that they participated in the introduction of evidence before the fact finder, there is nothing for us to review regarding denial of the renewed motion.

*Judgment affirmed. Miller and Ray, JJ., concur.*