**SECOND DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 27, 2017**

# In the Court of Appeals of Georgia

A17A0132. CHEROKEE FUNDING LLC et al. v. RUTH et al.

A17A0208. RUTH et al. v. CHEROKEE FUNDING LLC et al.

REESE, Judge.

The Appellants, Cherokee Funding LLC, Cherokee Funding II, LLC, and Cherokee Funding III, LLC, and Reid Zeising (collectively, "Defendants"), appeal from the trial court's orders denying in part and granting in part their motion to dismiss this putative class action for damages premised on violations of the Georgia Industrial Loan Act ("GILA"),[1] and the Payday Lending Act ("PLA").[2] Cross-Appellants Kimberly Oglesby (the Plaintiff who sued individually and on behalf of others similarly situated) and Ronald Ruth, (collectively, "Plaintiffs"), seek review

---

[1] OCGA § 7-3-1 et seq.

[2] OCGA § 16-17-1 et seq.

of the same orders. For the reasons set forth, infra, we affirm in part and reverse in part.

Viewed in favor of the Plaintiffs,[3] the record shows that Ruth and Oglesby retained attorney Michael Hostilo[4] to represent them in personal injury lawsuits after being involved in separate unrelated vehicle accidents. During the course of Hostilo's representation, the Defendants entered into separate "funding agreements" with Ruth[5] and Oglesby[6] and provided funds to them, each in a principal amount of less than $3,000. Ruth claims that when his personal injury lawsuit settled in February 2016, the Defendants sought repayment of about $84,000, which encompassed about $5,300 in principal. Oglesby claims that she borrowed around $400 from the Defendants and, when her personal injury litigation was resolved in 2014, Hostilo deducted about $1,000 to pay the Defendants for her "loans."

---

[3] *LaSonde v. Chase Mtg. Co.*, 259 Ga. App. 772, 774 (1) (577 SE2d 822) (2003).

[4] Michael Hostilo is not a party to this appeal.

[5] The record indicates that after initially receiving $1,000 from the Defendants, Ruth entered into additional funding agreements, receiving at least another $2,300 in principal.

[6] The record does not contain the funding agreement signed by Oglesby or any of her requests for funding from the Defendants.

The Defendants moved to dismiss the complaint for failure to state a claim, arguing that they were not subject to the PLA or the GILA because the "funding agreements" at issue were not "loans," but rather were "investments" in the Plaintiffs' litigation.[7] After a hearing, the trial court granted in part and denied in part the Defendants' motion, dismissing the GILA claims, but allowing the PLA claims to proceed. The Defendants filed a motion seeking a certificate of immediate review. The trial court certified its orders for immediate review. This Court granted the application for interlocutory appeal, and these appeals follow.

This Court reviews a trial court's ruling on a motion to dismiss de novo.[8] "A motion to dismiss for failure to state a claim should be sustained if the allegations of the complaint reveal, with certainty, that the plaintiff would not be entitled to relief under any state of provable facts asserted in support of the complaint."[9] With these guiding principles in mind, we turn now to the parties' specific claims of error.

---

[7] Zeising also moved to dismiss all claims against him on the ground that he was shielded from liability by the Georgia Limited Liability Company Act, OCGA § 14-11-100 et seq. The trial court converted Zeising's motion to dismiss on this issue to a motion for summary judgment. That ruling is not at issue in the instant appeal.

[8] *Houseboat Store, LLC v. Chris-Craft Corp.*, 302 Ga. App. 795 (692 SE2d 61) (2010).

[9] *LaSonde*, 259 Ga. App. at 774 (1) (citation omitted).

3

1. The Defendants assert that the trial court erred in denying their motion to dismiss the Plaintiffs' PLA claim, arguing that under the rule of lenity, the PLA does not apply because the funding agreements do not constitute "loans" that are regulated by the statute.[10] We agree.

In reviewing the statutes at issue in this appeal, we are mindful that in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[11] Toward that end, we must afford the statutory text its plain and ordinary meaning,[12] consider the

[10] In their appeal, the Defendants also appear to seek affirmation of the trial court's ruling that the GILA does not apply. It is well settled in Georgia that appellate courts are courts of review for the correction of errors. See *Alpha Nursing Svcs. v. Vickery*, 319 Ga. App. 533, 537 (3), n. 6 (732 SE2d 760) (2012) ("In order for a Georgia appellate court to review a trial court ruling for legal error, a party must set forth in the enumeration of errors the allegedly erroneous ruling."); see also OCGA § 5-6-40; Court of Appeals Rule 25. In their cross-appeal, the Plaintiffs have alleged in their enumeration of error that the trial court erred in finding that the GILA does not apply in this action.

[11] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation and citation omitted); *accord Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[12] *Deal*, 294 Ga. at 172 (1) (a) ("To that end, we must afford the statutory text its plain and ordinary meaning." (punctuation and citation omitted)); *see State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law

text contextually,[13] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[14] and seek to "avoid a construction that makes some language mere surplusage."[15] Simply put, when the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[16]

---

in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies). . . .").

[13] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, ___U.S. ___, ___ (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015) ("The common and customary usages of the words are important, but so is their context." (punctuation omitted)).

[14] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013).

[15] *In the Interest of L.T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (punctuation omitted); *accord Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011).

[16] *Holcomb v. Long*, 329 Ga. App. 515, 518 (1) (765 SE2d 687) (2014) (punctuation omitted); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

The PLA prohibits "making, offering, arranging, or acting as an agent in the making of loans of $3,000.00 or less" unless permitted under certain other federal and state laws, which are delineated in the PLA.[17] Although the PLA does not define the term "loan,"[18] the statute applies, by its terms, to "all transactions in which funds are advanced to be repaid at a later date, notwithstanding the fact that the transaction contains one or more other elements[.]"[19]

The PLA is a criminal statute.[20] Thus, under the rule of lenity, it "must be construed strictly against criminal liability and, if it is susceptible to more than one reasonable interpretation, the interpretation most favorable to the party facing

---

[17] OCGA § 16-17-2 (a).

[18] See generally OCGA §§ 16-7-1 through 16-17-10.

[19] OCGA §§ 16-17-1 (a); 16-17-2 (b). See also *Clay v. Oxendine*, 285 Ga. App. 50, 51 (1) (645 SE2d 553) (2007) (Generally, a payday loan has been defined as "a loan of short duration, typically two weeks, at an astronomical annual interest rate. Payday loans are the current version of salary buying or wage buying. The fees, charges, and interest on a payday loan are between 15 percent and 30 percent of the principal for a two-week loan, constituting a pretext for usury. Because the maturity date of these loans is usually set to coincide with the borrower's next payday, the loans are often called payday loans.") (citations and punctuation omitted).

[20] OCGA § 16-17-2 (d); see OCGA §16-17-2 (b).

criminal liability must be adopted."[21] Further, the General Assembly lacks the power to "legislate the truth of the facts" and to "bind the courts by recitals of facts in a public statute."[22]

In the present case, the funding agreements state as follows: "[i]f Client complies with this funding agreements and recovers nothing from the legal claim, then [Defendants] shall receive nothing." The funding agreements also contain the following language:

THIS IS A NON RECOURSE TRANSACTION: This Agreement, and the obligation to pay, is speculative, and contingent upon the successful resolution of the litigation. Cherokee Funding is taking a high risk giving me[, the Client,] this Funding. I understand that there is a premium charged in doing so. I have been advised that I should not accept this Funding if I have any other alternative to meet my immediate economic needs. However, Cherokee Funding will be paid only from the Proceeds of the lawsuit, and agrees not to seek money from me[, the Client,] directly in the event the lawsuit is not successful. IF THERE IS

---

[21] See *Fleet Finance v. Jones*, 263 Ga. 228, 231 (3) (430 SE2d 352) (1993) (citations omitted) (interpreting OCGA § 7-4-18).

[22] *Western Sky Financial v. State of Ga.*, 300 Ga. 340, 345 (1) (a) (793 SE2d 357) (2016) (citations and punctuation omitted). In that case, the Supreme Court of Georgia held that the statement that payday lending "does not encompass loans that involve interstate commerce" is a legislative finding of fact that was not intended to define the limits of the PLA. Id. at 346 (1) (b).

NO RECOVERY OF PROCEEDS BY THE CLIENT, THEN CHEROKEE FUNDING SHALL RECEIVE NOTHING AND THERE IS NO ASSOCIATED OBLIGATION TO PAY THE AMOUNTS ADVANCED.

A plain reading of the quoted portion of the funding agreements demonstrates that the use of the phrase "shall receive nothing" in conjunction with "no associated obligation to pay" means that the requirement of repayment is completely contingent upon the recovery of proceeds from the related legal claims. Stated another way, if the Plaintiffs had not prevailed in their personal injury litigation, the Defendants would have received nothing.

Thus, we conclude that, based on the plain language of OCGA §§ 16-17-1 (a) and 16-17-2 (b), the funding agreements do not fall under the auspices of "loans" under the PLA. Instead of being loans that are regulated by the PLA, the funding agreements appear to be investment contracts.

An "investment contract" is not statutorily defined in Georgia.[23] However, the United States Supreme Court has devised a test to determine if "a particular scheme

---

[23] See *Cushing v. Cohen*, 323 Ga. App. 497, 502 (1) (746 SE2d 898) (2013) (The term "investment contract" is not comprehensively defined by the Georgia Securities Act of 1973. The Georgia Securities Act of 1973 was repealed in its entirety and replaced with the Georgia Uniform Securities Act of 2008.); see also OCGA § 10-5-80 (a).

8

is an investment contract[.]"[24] The test is "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others."[25] The Supreme Court of Georgia has adopted this test.[26]

In the present case, the funding agreements specifically state that "no part of the funding amount will be used to support, direct or maintain the legal claim or its prosecution"[27] and that the agreements provide the Defendants with "a security interest from [the Plaintiffs]." From the language of the funding agreements, it is clear that the Defendants and the individual Plaintiffs are involved in a common venture, which is to prevail in the underlying personal injury lawsuits. However, the phrase indicating that the monies received is not to be used to fund the underlying personal injury litigation shows that the Defendants are not directly involved in the pursuit or

---

[24] *Securities & Exchange Comm. v. Edwards*, 540 U. S. 389, 393 (II) (124 SCt 892, 157 LE2d 813) (2004) (citation omitted).

[25] Id. (citing *Securities & Exchange Comm. v. W. J. Howey Co.*, 328 U. S. 293, 298-299 (66 SCt 1100, 90 LEd 1244) (1946) (punctuation omitted)).

[26] See *Hicks v. State*, 315 Ga. App. 779, 781-782 (1) (728 SE2d 294) (2012).

[27] See OCGA § 44-12-24 ("A right of action for personal torts, for legal malpractice, or for injuries arising from fraud to the assignor may not be assigned."); *American Chain & Cable Co. v. Brunson*, 157 Ga. App. 833, 835 (278 SE2d 719) (1981) (It is impermissible to assign a personal injury claim in Georgia.).

the outcome of the individual Plaintiffs' legal actions that the funding agreements reference.

Consequently, we find that the Defendants invested money in the outcome of the personal injury lawsuits of the Plaintiffs, with a return on the investments that were attributable to the efforts of others, namely the Plaintiffs and their counsel, which is consistent with the United States Supreme Court's broad construction of what constitutes an investment contract.[28] Applying the rule of lenity and strict construction, we must conclude that the funding agreements at issue are not loans and, thus, are not subject to the PLA.

Therefore, the trial court erred in denying the Defendants' motion to dismiss the PLA claim.

*Case No. A17A0208*

2. The Plaintiffs argue that the trial court erred in granting the Defendants' motion to dismiss claims based upon the GILA. We disagree.

The GILA was enacted to

provide a source of regulated loans for those who had been borrowing at usurious interest rates from loan sharks, street shylocks and wage

---

[28] See *Securities & Exchange Comm.*, 540 U. S. at 393 (II).

10

buyers. [The] GILA applies to all persons, defined as individuals, copartnerships, associations, corporations, and all other legal and commercial entities, engaged in the business of making loans in amounts of $3,000 or less, unless such persons are expressly exempted.[29]

The GILA defines a "loan" as "any advance of money in an amount of $3,000.00 or less under a contract requiring repayment and any and all renewals or refinancing thereof or any part thereof."[30] As used in OCGA § 7-3-3 (4), the phrase, "requiring repayment" has a clear and unambiguous requirement that a loan must be repaid. This is bolstered by the General Assembly's stated intent that,

> [t]he purpose of this chapter is to authorize and provide regulation of the business of making loans of $3,000.00 or less and to bring within the regulation of this chapter and within its provisions all loans of $3,000.00 or less, whether or not made by a person organized or operating under the provisions and authority of some other statute, except those persons and loans expressly exempted by the terms of this chapter. Even though

---

[29] *BankWest, Inc. v. Oxendine*, 266 Ga. App. 771, 772-773 (1) (598 SE2d 343) (2004) (citations and punctuation omitted).

[30] OCGA § 7-3-3 (4). See also *Isaacson v. House*, 216 Ga. 698, 702 (1) (119 SE2d 113) (1961) (The Supreme Court of Georgia has defined a loan as "the delivery by one party to, and the receipt by another party of, a sum of money upon an agreement, express or implied, to repay the sum with or without interest") (citation and punctuation omitted); see *Golden Atlanta Site Dev. v. Tilson*, 299 Ga. App. 646, 647-648 (1) (683 SE2d 166) (2009).

authorized by other statutes of force, such loans and the persons making them, unless expressly exempted, shall be within the operation of this chapter in accordance with its terms.[31]

As explained in Division 1, supra, we conclude that the funding agreements are investment contracts and not loans. Unlike loans, the funding agreements do not always require repayment. Any repayment, under the funding agreements, is contingent upon the direction and time frame of the Plaintiffs' personal injury litigation, which may be resolved through a myriad of possible outcomes, such as settlement, dismissal, summary judgment, or trial.

While the litigation funding engaged in by the Defendants, with its associated fees and charges, may legitimately be labeled financially insidious, it is the General Assembly, not this Court, which must, if it so chooses, expressly promulgate laws to regulate this activity.[32] Because we view the funding agreements between the Plaintiffs and the Defendants as investment contracts, it was not error for the trial

---

[31] OCGA § 7-3-2.

[32] See *Deal*, 294 Ga. at 174 (1) (a), n. 11 (Policy arguments are for the legislature to consider. It is the duty of the judiciary to "interpret the laws as they are written.") (citation and punctuation omitted).

court to find that the GILA did not apply. Thus, the trial court properly dismissed the GILA claims.

*Judgment affirmed in Case No. A17A0208. Judgment reversed in Case No. A17A0132. Dillard, P. J., and Bethel, J., concur.*